## No. 11,157.

### SUCCESSION OF DAVID D. WITHERS.

1. The proof disclosing that a non-resident or foreign executor has presented and had the will of the testator duly recorded in a court of this State, conformably to law, and obtained the appointment of testamentary executor, and qualified as such, such appointee is entitled to exercise the duties of his trust notwithstanding he has furnished no bond or other security, nor caused an inventory to be commenced within the ten-day limit fixed by law.

2. The law makes it the duty of a non-resident executor to give security for such sum, and under such conditions as are required of dative testamentary executors, and they are required to give security in the *same manner*, as curators of vacant successions are; and such curator can only be removed from office in a direct action instituted by the attorney for absent heirs, after due citation.

3. In such case there is no existing vacancy that can be filled by the appointment of the public administrator as dative testamentary executor; and he is without interest or authority to institute proceedings for the removal of a testamentary executor in order to create a vacancy that he may fill by obtaining such appointment. Nor can a rule propounded by an attorney for absent heirs having such object in view be of any greater force, or avail—such attorney having been appointed on the petition of the public administrator as an incident to the administration that he proposed to inaugurate. This claim to administration failing at the threshold, that of the attorney for absent heirs must necessarily pass out of court, also.

APPEAL from the Civil District Court for the Parish of Orleans. Rightor, J.

---

*Chrétien & Suthon* for the Public Administrator, Appellee:

A person who applying for the administration of an estate alleges the necessity of an administration, but who subsequently fails to qualify, can not be heard, when opposing the claim of the public administrator for appointment as dative testamentary executor, to allege a different state of facts and deny that

any necessity for such an administration exists; he is estopped from so doing. 22 An. 252; 6 M. 280; 1 R. 546; 6 R. 142; 4 An. 416; 11 An. 710; 5 An. 18.

A foreign executor who wishes to qualify in the State as such executor must furnish bond; he can not be dispensed from so doing. R. S., Sec. 460; 21 An. 394; 35 An. 404, 1035; 30 An. 4; 47 An. 346; 31 An. 727; C. C. 1678, 1679.

A foreign executor failing to furnish the bond required by law, within the delays provided by law, forfeits his trust and his appointment, *ipso facto*, is vacated. C. C., Arts. 1132, 1127.

The giving of bond alone qualifies the foreign executor. He can not qualify without complying with the law in that respect. 35 An. 1035.

Whenever a foreign executor fails to qualify, his office becomes vacant, and if the succession is one in which the heirs are absent and not represented, the public administrator is entitled to the appointment of dative testamentary executor of such vacant estate, Acts 1877, Extra Session, p. 111.

Letters issued to a person residing in New York by the Surrogate Court of that State have no extra-territorial force. In order to have any force or effect in this State, the letters issued by the New York court have to be registered in this State according to the law of Louisiana. Story on Conflict of Laws, Secs. 512, 550, 511, 515, 523, 524; Schouler's Executors and Administrators, Secs. 164, 173, 190, 137, 91, and particularly Sec. 24.

The executor qualified in New York has and can exercise no power under that qualification in Louisiana. Our code provides for the manner in which he can acquire recognition, and until then, any act done by him under the New York letters is *ultra vires* in this State.

The *situs* of shares of stock of corporation, organized and doing business in Louisiana, is, after the death of the owner, *quoad* the foreign executor in Louisiana. The title of the foreign executor can not, *de jure*, extend as a matter of right beyond the territory of the government which granted it, and the movable property therein. Story on Conflict of Laws, Sec. 512.

The personal property of the deceased testator, whether of goods or of debts, situated at the time of his death in this State, can not be lawfully disposed of, except under an administration granted in this State. Story on Conflict of Laws, Sec. 520.

Act 109 of the session of the Legislature of 1388 in no manner changed the laws of this State requiring foreign executors to qualify in this State and to furnish bond, as required by law. It provides for an easier and less costly manner of selling the shares of incorporated companies.

Repeals by implication are not admitted.

The act of incorporation of the New Orleans Gas Light Company, among other things, provides that its shares of stock can be transferred on the books of the company alone; the transfer of the certificates of shares, which under the act of incorporation are but evidences of the ownership of the stock, is not a transfer of the shares of stock. By its act of incorporation the *situs* of the stock, *quoad* Withers, was in New Orleans. The heirs and executor of Withers can not acquire any greater right than Withers himself had.

*Henry C. Miller* for the Executor, Appellant:

The law authorizes the non-resident executor to administer on presentation of his letters from the court of another State, the domicil of the testator, and merely to make room for the public administrator, the law will not toler-

ate the displacement of the executor for not filing a bond or making an inventory; no creditor, there being none demanding either, and the heirs waiving both, the bond and inventory being required only for the interest of creditors and heirs. Civil Code, Arts. 1688, 1689; Revised Statutes, Sec. 1460; Code of Practice, Art. 1018.

Nor can the non-resident executor duly recognized by our courts 'be removed from his office for any cause, by rule or motion. No executor can be removed, except by suit begun by petition, citation and judgment in regular course. Code of Practice, Art. 1018; Succession of White, 9 Robinson 353; Succession of Boyd, 12 An. 611; Succession of Williams, 22 An. 96, *passim.*

The legislation creating the office of public administrator does not require, without any necessity, the judicial administration of the property of the deceased. That legislation is subordinated and controlled by the well settled jurisprudence of the State, that forbids the appointment of any administrator, with the attendant expenses of administration, when there is no necessity whatever for such appointment or administration. Crocker, 14 An. 94; Bryan vs. Atchison, 2 An. 154; Succession of Story, 3 An. 502; Broussard vs. Deitsh, 30 An. 1109; Succession of Hebert, 33 An. 1109.

Hence, there is no warrant in our law for the appointment of a public administrator when there are no debts of the deceased to pay, nor difference of any kind among the heirs to adjust, all of age and maintaining the right of the executor, also the trustee for them, under the will of the deceased, and repelling the interference of the public administrator; to require an administration of the property of the deceased under such circumstances, without the semblance of necessity for it, would be merely to make costs and fees for the public administrator, and our law would not allow the heirs of the deceased to be burdened with an utterly useless and expensive administration; least of all, on the application of the public administrator representing no party in interest, but coming forward on his own motion to insist on his appointment. See above authorities. See act creating the office of public administrator. Acts of 1890, Regular Session, p. 120. Amendatory Act of 1877, p. 111.

Again, the administration of the public administrator is utterly excluded when the entire property of the deceased consists in stock in corporations, authorized by our law to be transferred and sold by the non-resident executor on the simple exhibition of his letters from the proper court of the domicil of the testator, without any appointment of an administrator or succession proceedings here of any kind whatever; still less is the appointment of the public administrator authorized when, at the time he claims the appointment, the non-resident executor is in actual possession of the stock under transfers directed by the law. See Revised Statutes, Sec. 313, enlarged by the Act No. 47. Regular Session of 1877, p. 60, and Act 109 of 1888.

Nor is the pretension of the public administrator to be appointed at all aided by the circumstance that the executor, under the erroneous impression that the deceased owned property here besides the stock, applied to our court for recognition of his letters, but never qualified under the order of the court. It is enough that in point of fact there was no property of the deceased, save and except the stock confided by our law to the exclusive administration of the non-resident executor without bond, oath or any succession proceedings here. Hence, that the non-resident executor did not give bond or take any other steps under an unnecessary order for his recognition gives no warrant for the appointment of the public administrator.

Finally, the public administrator is absolutely without right to provoke the removal of an executor. His dismissal can be demanded, when the cause exists, only by an heir or creditor. Act 87 of 1870, Regular Session, p. 120; Amendatory Act of 1877, No. 74, p. 111, Extra Session. Succession of Burnside, 34 An. 728.

---

*James Legendré* on the same side.

---

*Haynes J. DeLavergne* for absent heirs.

---

The opinion of the court was delivered by

WATKINS, J. This case presents a controversy relative to the appointment of the public. administrator of the parish of Orleans to administer the succession of the deceased in the State of Louisiana.

The executor appointed by the proper court of the State of New York, where he resided at time of death, to administer his succession in that State, insists the appointment of the public administrator on the ground that he was, at date of application, in the actual possession of, and had dominion over, all the Louisiana assets of the succession of the deceased, with the sanction of the heirs and legatees thereof, and hence there was and is no necessity for an administration in Louisiana—there being no creditors thereof.

The controversy arose under the following circumstances, viz.: On the 24th of March, 1892, Alonzo C. Monson, of the State of New York, filed a petition in the Civil District Court praying to have the will of the deceased registered, and himself appointed and confirmed as testamentary executor thereunder.

On the 25th of October, 1892—several months after the filing of the application—the public administrator claimed the administration of the Louisiana estate of Withers, on the ground that the aforesaid foreign executor had neither furnished, in the meanwhile, the bond required by law, nor caused an inventory to be taken.

The public administrator accompanied his petition for appointment, with a prayer for the appointment of an attorney for absent heirs, and for an inventory to be taken; and, accordingly, an attorney was appointed to represent the absent heirs, and an inventory was taken. Subsequently, Monson, executor, filed an opposition to the demands of the public administrator, coupled with the exceptions (1) that his appointment as executor can not be 'thus collaterally

attacked; and (2) that the public administrator is without interest to have his appointment annulled and marked.

The grounds of his opposition are that he was, as executor, dispensed from giving bond, and that inasmuch as Withers owned in Louisiana no property except shares of stock in corporations, the legal *situs* of which was, at death of defendant, in the State of New York, where he lived, no administration in Louisiana was necessary. He also made opposition to the appointment of an attorney to represent the absent heirs.

On the 9th of November, 1892, the attorney for absent heirs took a rule on Monson to have him divested of his testamentory executorship, on the ground that he had not furnished bond and security as required by law.

These several proceedings were cumulated for trial, and upon the trial judgment was pronounced as follows, to-wit: First, making absolute the rule of the attorney for absent heirs divesting the executor of his appointment; second, overruling the exceptions of the executor; and third, appointing the public administrator to administer the decedent's succession in Louisiana.

It is from this judgment that the executor has appealed.

The pertinent facts necessary to be considered are as follows, viz. :

That in the petition of Monson it is alleged that the deceased left some property in the city of New Orleans and within the jurisdiction of the court, "all of which is *movable property* subject to the laws of New York;" averring "that he can not administer *said property* without the authority of this court." That the succession owes no debts in this State, and has in its possession no property claimed by other persons. That by an express provision of the will he is dispensed, as executor, from giving bond. Further, alleging the probate and registry of the will of the deceased in the proper court in the city and State of New York, his prayer is that the will be recognized and registered in the Civil District Court of Louisiana, and that letters testamentary issue to him.

Thereupon the court granted an order directing that the will be approved and registered, and that letters testamentary issue to Monson *as testamentary* executor of the deceased in this State—no mention being made in the petition, or order, in reference to bond.

The will provides that no bond or other security be required of

the executor, and, in terms, waives "every and any bond, or other security which, by any statute or law of any State, is, or may, at any time hereafter, be required to be given by the executors, or trustees."

Under this order of court, and in pursuance of the provisions of the testament of the deceased, Monson qualified as *testamentary executor* of the deceased in Louisiana on the 24th of March, 1892, and upon the same date letters testamentary issued to him in pursuance of said appointment—but there was no mention made of any bond having been either required or given.

The averments of the petition of the public administrator are, substantially, that Monson's appointment was made subject to his fulfilling the requirements of the law, and that one of the essentials to the qualification of an executor residing out of the State is the giving of such a bond as the law directs *within* ten days after his appointment; and that, inasmuch as Monson did not furnish bond within the time required, "he *vacated his appointment as executor, and a vacancy exists in the said trust.*" That the heirs and legatees of the deceased are absent from " and not represented in the State, and the succession of the deceased is vacant, and, under the law, petitioner, by virtue of his office, is entitled to be appointed *dative* testamentary executor."

From an inventory taken in October, 1892, long subsequent to the appointment and qualification of Monson as executor, it appears that the assets of the succession of Withers in this State consisted of 5380 shares of the capital stock of the New Orleans Gas Light Company of the par value of $100 each, and that same was duly transferred to Monson, executor, under and in virtue of the order of appointment and upon the exhibition of his letters testamentary, as will appear from the books of transfer of said company, and as is further evidenced by the special authorization of the judge contemporaneous in date.

It further appears that in pursuance of, and in conformity with said order of court, all original certificates standing in the name of Withers were canceled on the books of the company on the 2d of April, 1892, and new certificates were issued on the same date to Monson, executor and trustee.

The only other asset of Withers' in the State of Louisiana was forty-four shares of the capital stock of the Metairie Cemetery Association of the par value of $100 each.

36

The inventory shows that the cotton which was supposed, at the time of filing of Monson's petition, to be in the hands of Withers' cotton factor had been sold and the proceeds transmitted to his agents in Natchez, Miss.; hence there was no other property belonging to his succession, which was susceptible of administration in this State, other than said shares of stock, of the apparent value of $531,640.

The averments of the rule of the attorney for absent heirs are tantamount to a repetition of the allegations made in the petition of the public administrator, and his prayer is to the effect that "the court should *declare* Monson divested of said executorship."

This rule having been filed long subsequent to the issues being made up between the public administrator and executor, the latter excepted to and answered the same, and upon the grounds taken in his opposition.

This complicated and extended statement of fact leaves the case standing upon the question of law propounded by the exceptions of the executor; and they, practically, involve but one proposition—for if the failure of Monson to furnish bond did not, *ipso facto*, vacate his trust as executor, as alleged by counsel for the public administrator, this is a *collateral* attack upon the order of court making his appointment; and if there is an existing administration of the succession of Withers in Louisiana that must be first terminated and *decreed vacant* by a judgment of court, certainly then the public administrator is without interest to demand the administration, at least until that is done.

And the facts recited clearly show that when the petition of the public administrator was filed in the Civil District Court Monson had ample and complete authority under the orders of that court to control and manage the assets of the succession of Withers in Louisiana, as its duly appointed and qualified and commissioned *testamentary executor*.

The provisions of law on which the public administration relies are as follows, viz:

" Whenever the testamentary executor named in the will shall be present in the State, but be domiciled out of it, the judge shall only grant him the letter on the execution of his bond, with a good and solvent security for such a sum, and under such conditions as are required by law from *dative testamentary executors*."    R. S., Sec. 1460.

And it appears from the provisions of the code that dative testa-mentary executors must "give security in the same manner as curators of vacant successions." R. C. C. 1679.

We must, therefore, examine the provisions of R. C. C. 1132, in order to ascertain the precise conditions on which the bond of a curator depends.

It reads as follows, viz.: "If any one, after having demanded and obtained the curatorship of *a vacant succession* or of absent heirs, permit *ten days* to elapse after his appointment without giving the security or special mortgage required by law *the judge shall, on motion of the counsel of the absent heirs*, duly notified to the curator, declare him divested of his curatorship, and shall forthwith and *ex officio* appoint a curator."

These different articles must be interpreted together, and thus interpreting them, it becomes apparent that the failure to give bond does not operate the vacation of a testamentary executor's trust *ipso facto*, but that action by the court is requisite, and a judgment of the court declaring him divested of his trust, on that ground, must be formally and after due proceedings and notice pronounced.

This theory is enforced by the provisions of the Revised Statutes, which declare, viz.:

"Whenever the testamentary executor or any other administrator of a succession shall suffer ten days to elapse after his confirmation or appointment, *without having either qualified or caused an inventory to be at least begun*, the judge shall forthwith and *ex officio* appoint a successor in office, as if no such officer had been confirmed or appointed" (R. S., Secs. 11, 1110, 1468, 3699)—putting the judge's power of appointment *ex officio* distinctly upon the ground that the person first appointed had neither qualified nor caused an inventory to be commenced within the ten days' limit therein established.

It is true that similar provisions of the code puts the power of appointment *ex officio* of a successor on the ground that the first appointee had failed to furnish the security required (R. C. C. 1041), thus differing apparently from the quoted provision of the code and statutes. R. C. C. 1132; R. S., Secs. 11 and 1110.

But R. C. C. 1041 relates to *legal* successions (R. C. C. 877), and R. C. C. 1132 relates to *vacant* successions (R. C. C. 1095).

This analysis of the code and statutes appertaining to vacant successions makes it clear that a succession to which a *testamentary*

executor has been appointed, who has qualified and to whom letters testamentary have been issued according to law and the order of appointment, is not vacant because the appointee has not furnished bond and security.

Such being the situation of the instant case, it was necessary for the curator for absent heirs to have *primarily* instituted suit for the revocation of the order appointing Munson *testamentary* executor, to have caused him to be cited, and to have obtained a judgment decreeing his trust vacated, before the public administrator *could apply* for appointment as *dative* testamentary executor.

At the time of the public administrator's application there was no *vacancy* for him to fill, no *vacant* estate for him to administer—the failure of the non-resident *testamentary* executor to furnish bond, not vacating his appointment *ipso facto*. Nor did the rule of the attorney for absent heirs mend the matter. He was appointed on the application of the public administrator, and as an incident of the administration that he proposed to inaugurate; and his claim to the administration being defeated at the threshold, that of the attorney for absent heirs necessarily passed out of court also.

The attorney for absent heirs could not stand alone, no administration having been commenced by the public administrator, and the heirs and legatees of Withers having joined the standard of Monson, and made resistance to the appointment of the public administrator, on the ground that the succession owed no debts, and there was no necessity for additional administration thereof.

Under the original act creating the office and defining the duties of public administrators, same were strictly limited to "*intestate* successions" *eo nomine* (Sec. 1 of Act 87 of Ex. Ses. of 1870); but that section was so amended by Sec. 3 of the Act of 1877 as to confer upon those functionaries the right to administer "all *testate* successions in the parish of Orleans when from any cause the executor can not discharge the duties of his office," and, in such case, the judge is authorized to appoint the public administrator dative testamentary executor. Sec. 3 of Act 74, Ex. Ses. of 1877.

The precise question here presented was examined and decided by this court, adversely to the contention of the public administrator, in Succession of Burnside, 34 An. 728, on full consideration of the provisions of the statutes above quoted, the court employing this language, to-wit:

"From the petition of the public administrator it appears that the testamentary executor is sought to be removed for the main reasons that he has failed to make an inventory within the time required by law, or to qualify according to law, and because he has left the State permanently; and the question presented is whether, assuming these averments to be true, the public administrator has any authority to urge these derelictions, and to claim the removal of the testamentary executor"—the identical question we have before us, though not so strong a case in point of fact as the executor, Monson, has.

The court then proceeded to say that the public administrator is not a functionary known to the civil law, and can "only claim such rights as are clearly conferred on him by the legislation which created his office," and, after reciting what that legislation was, they held as follows, to-wit:

"If it be true that Oliver Beirne has not qualified according to law, has failed or even refused to have an inventory taken, he may be summoned on proper showing by parties in interest, such as heirs or creditors, or legatees. But no complaint is made by any such parties, and if they are satisfied with Beirne's qualification or administration, of what concern is that to the public administrator? He has no authority in law to supervise the administration or settlement of successions, or the legality of the appointment of administrators, executors, or curators.

"His power to act arises only in the cases provided by law, which created his office. The utility of his office arises only according to law, and his services are required only when a testate succession is not being administered at all. His office was intended to fill a vacancy, but he has no power to provoke a vacancy.

"We know of no law, and we have been referred to none, authorizing the public administrator to judicially seek to remove an executor or administrator." Succession of Smith, 40 An. 105.

That doctrine is especially applicable and controlling in this case, and clearly shows the public administrator to be without right or authority, as he is without interest, to attempt to have Monson's appointment as testamentary executor declared void, for the sole purpose of creating a vacancy which he might be appointed to fill— especially as there are no creditors, and the heirs and legatees of the deceased are resisting and opposing his demands and pretensions.

The judgment appealed from must be annulled and reversed. It is therefore adjudged and decreed that the judgment and decree appealed from be annulled and reversed; and it is further ordered and decreed that the order appointing the public administrator dative testamentary executor be annulled and set aside, and his demands be rejected at his cost in both courts.